United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOSTER OGALA, et al., | Case No. 14-cv-173-SC |
| Plaintiffs, | ORDER GRANTING MOTION TO DISMISS |
| v. | |
| CHEVRON CORP., et al., | |
| Defendants. | |

## I. INTRODUCTION

Now before the Court is Defendants Chevron Corporation ("Chevron") and Chevron USA, Inc.'s ("CUSA") motion to dismiss Plaintiffs' Complaint. ECF No. 1 ("Compl."). The motion is fully briefed[1] and suitable for determination without oral argument per Civil Local Rule 7-1(b). For the reasons set forth below, Defendants' motion to dismiss is GRANTED, and Plaintiffs' claims are DISMISSED with leave to amend.

---

[1] ECF Nos. 13 ("Chevron MTD"), 25 ("Ogala Opp."), 27 ("Chevron Reply").

## II. BACKGROUND

On January 16, 2012, an explosion occurred on the KS Endeavor, an offshore rig drilling for natural gas in the North Apoi Field off of the coast of Nigeria. The explosion caused a fire that burned for forty-six days. Plaintiffs are persons who reside in the Niger Delta region of southern Nigeria. Id. ¶ 6. The named plaintiffs also claim to represent 65,000 other people "directly affected by, interested in and having claims arising out of the incident . . . ." Id. ¶ 9. They allege that they have suffered losses to their livelihood, environmental damage, and health problems as a result of the explosion and fire. Id. ¶ 3.

Defendants are three American corporations: Chevron Corporation ("Chevron"), Chevron Investments, Inc. ("CII"), and Chevron U.S.A., Inc. ("CUSA") (collectively "Defendants").[2] Plaintiffs allege that the KS Endeavor was negligently operated by KS Drilling under the management of Chevron Nigeria Limited ("CNL"). Id. ¶¶ 2, 5, 21. CNL is a wholly owned subsidiary of CII, which in turn is a wholly owned subsidiary of Chevron. Id. ¶¶ 10-11. CNL is not named as a defendant in this action. Defendants have moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v.

---

[2] CII has not participated in this motion. Chevron and CUSA state that Plaintiffs have not served the summons and complaint on CII. Chevron MTD at 1 n.1. Federal Rule of Civil Procedure 4 specifies the requirements for properly serving a defendant.

Block, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

## IV. DISCUSSION

### A. Imputing CNL's Liability to Defendants

Plaintiffs claim that Defendants are liable for CNL's actions. However, "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." United States v. Bestfoods, 524 U.S. 51, 61 (1998) (internal quotation marks omitted). To recover against Defendants,

3

Plaintiffs must establish that this principle of corporate law does not apply in this case and that Chevron, CII, and CUSA are liable for CNL's actions in Nigeria. While Plaintiffs are correct that the application of exceptions to this general principle is highly fact-sensitive, Ogala Opp. at 11-12, they still must plead facts which, if true, would plausibly render Defendants liable for CNL's acts. Plaintiffs pursue liability under two exceptions to the normal rule that a corporation is not liable for its subsidiary's actions.

### 1. Alter Ego

Plaintiffs first argue that Defendants are liable for CNL's actions under the alter ego doctrine. This doctrine allows courts to pierce the corporate veil and hold a corporation's owners liable for the corporation's acts. A corporation may be held liable as the alter ego of another corporation if (1) there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) failure to disregard the corporate form would cause an inequitable result. Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 538 (Cal. Ct. App. 2000) (citing Automotriz Del Golfo De California v. Resnick, 47 Cal. 2d 792, 796 (Cal. 1957)). Corporations are the alter egos of those controlling them when "the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose." Id.

Plaintiffs have pleaded a number of factual allegations relevant to the unity of interest and ownership factor. The Court notes, however, that Plaintiffs refer to Chevron, CII, CUSA, and CNL collectively as "Chevron" throughout the Complaint. Compl.

¶ 2. It is consequently impossible to tell whether allegations refer to a defendant, multiple defendants, or CNL (which is not a party). As a result, it is extremely difficult to determine whether the Complaint states a plausible claim against any one defendant. Plaintiffs also note that any reference made in the Complaint to any conduct committed by Chevron, CII, CUSA, or CNL shall be deemed to mean the conduct of all defendants. Id. ¶ 15. This compounds the confusion by converting the Complaint's more specific references to individual defendants, or to CNL, into references to all defendants. The effect is to render the Complaint so vague that it is an exercise in futility to attempt to determine which defendants (or non-parties) are referred to at various points. Nonetheless, the Court proceeds to attempt to parse the factual allegations of the complaint despite the confusion introduced by these methods of referring to Chevron, CII, CUSA, and CNL.

Plaintiffs claim that CUSA "employs various U.S.-based personnel who are responsible for providing oversight, supervision and planning for the business operations of CNL . . . ." Id. ¶ 12. Plaintiffs allege that "CUSA exercised substantial control over CNL's operations." Id. CNL also apparently shared staff and executives with Defendants: Plaintiffs allege that many CNL employees, "including those at the top," were employees of or working on assignment from Defendants. Id. ¶ 13. These are all factual allegations which the Court must presume to be true in ruling on the motion to dismiss. However, the Court cannot read these allegations -- as Plaintiffs urge it to -- as allegations against all defendants. Plaintiffs must plead specific facts that

implicate each defendant they name, and the Court finds that these facts implicate only CUSA.

In addition to these sound factual allegations, Plaintiffs add a number of remarkably convoluted disjunctive accusations. For example, Plaintiffs allege that "Chevron Corp. and/or Chevron Investments, and/or CUSA commissioned the acts complained of and/or authorized CNL in the commission of the acts alleged herein, and/or ratified the acts of CNL alleged herein." Id. ¶ 8. While a simpler version of that sentence might be classified as a factual allegation, Plaintiffs include so many alternative options that it is impossible to determine exactly what is alleged or which parties are allegedly responsible for it. As another example, Plaintiffs allege that:

> [D]ecisions taken as regards the continuing drilling despite the build-up of dangerous and harmful gases were actually taken by or known of or should have been known of and/or participated in, and/or authorized by; and/or paid for by, and/or benefitted and/or confirmed by, and/or ratified by Chevron Corp.

Id. ¶ 12. Here, the accusation seems to be aimed at Chevron alone. However, the disclaimer that references to Chevron should be deemed references to all defendants renders the allegation hopelessly unspecific. Additionally, the allegation itself is so ambiguous and conditional that it is unclear what Plaintiffs claim Chevron actually did. There are multiple theories of Chevron's involvement that might support liability, but Plaintiffs choose a few that might be sufficient and a few that are undoubtedly insufficient and lump them all together into a single incoherent sentence. Not only are these claims inadequately detailed, they are the sort of bare recitations of the elements of a claim that are not entitled to a

presumption of truth under Twombly and Iqbal.

The facts in Plaintiffs' complaint cannot support alter ego liability. The few sufficiently detailed facts relate only to CUSA and resemble those standard consequences of corporate ownership inadequate to demonstrate an alter ego. Even if those facts were sufficient to demonstrate the unity of interest and ownership required, Plaintiffs must also plead facts indicating that failure to disregard the corporate form would result in injustice. To state claims against Defendants as alter egos of CNL, Plaintiffs must plead more facts with much more specificity than they do in this first iteration of their complaint. Because Plaintiffs have failed to plead sufficient facts to render Defendants liable for CNL's actions, they fail to state a claim for which relief may be granted.

### 2. Agency

Plaintiffs also claim that Defendants are liable for CNL's acts because CNL was Defendants' agent. Corporate agency arises most frequently in the context of assessing minimum contacts for jurisdictional purposes, rather than liability. See, e.g., Sonora Diamond, 83 Cal. App. 4th at 540-42; F. Hoffman-La Roche, Inc. v. Superior Court, 130 Cal. App. 4th 782, 796-99 (Cal. Ct. App. 2005). However, a principal is liable for the acts of his agent "within the scope his actual or ostensible authority." Cal. Civ. Code § 2330. A principal is liable for his agent's negligence "in the transaction of the business of the agency", Id. § 2338, or where the principal has authorized or ratified the agent's conduct. Id. § 2339. Therefore, if Plaintiffs can prove that CNL was Defendants' agent and that CNL committed tortious acts within the

scope of that agency, those acts may be imputed to Defendants.

A corporate subsidiary is the agent of its parent if "the nature and extent of the control exercised over the subsidiary by the parent is so pervasive and continual that the subsidiary may be considered nothing more than an agent or instrumentality of the parent, notwithstanding the maintenance of separate corporate formalities . . . ." Sonora Diamond, 83 Cal. App. 4th at 541. Agency requires more than "the degree of direction and oversight normal and expected from the status of ownership." Id. at 540. Factors such as "interlocking directors and officers, consolidated reporting, and shared professional services" are expected in the normal course of a parent/subsidiary relationship and do not create a principal/agent relationship. Id. at 541. "As a practical matter, the parent must be shown to have moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over performance of the subsidiary's day-to-day operations in carrying out that policy." Id. at 542.

The Court finds that Plaintiffs have failed to plead facts sufficient to give rise to agency liability for any defendant. Plaintiffs have not alleged any facts indicating that Defendants took over CNL's day-to-day operations. Plaintiffs need not produce evidence at this stage in the litigation, but they must plead facts which, if true, would create liability for each defendant they name. In this case, that means facts demonstrating that each defendant exercised the requisite control over CNL and that CNL acted within the scope of its agency or that Defendants ratified its actions. Plaintiffs fail to state a claim that renders Defendants liable as principals of CNL.

8

**B.   Injury in Fact**

Defendants next argue that Plaintiffs have failed to plead an injury in fact adequate to confer standing.  "To establish the irreducible constitutional minimum of standing, a plaintiff invoking federal jurisdiction must establish injury in fact, causation, and a likelihood that a favorable decision will redress the plaintiff's alleged injury." Carrico v. City & Cnty. of San Francisco, 656 F.3d 1002, 1005 (9th Cir. 2011) (internal quotation marks omitted).  An injury in fact is "an invasion of a legally protected interest which is . . . concrete and particularized." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Plaintiffs do not respond to this argument in their opposition brief, except for a brief statement that "[t]he types of claimed injuries and economic damage sustained are also stated with particularity." Ogala Opp. at 16.  While Plaintiffs may be correct that the Complaint states the types of injuries they allege, more is required.  Simply listing various types of harm does not create a plausible claim that a concrete and particularized invasion of a legally protected interest has occurred. See, e.g. In re Toyota Motor Corp., 785 F. Supp. 2d 883, 901 (C.D. Cal. 2011) ("[T]here must be specific allegations that each lead Plaintiff suffered some loss.").

In their complaint, Plaintiffs allege that they have suffered (1) "losses to their livelihood; environmental disaster impacting upon food and water supplies; health problems," Compl. ¶ 3; (2) significant economic damages and loss of business, Id. ¶ 9; (3) "dead or diseased fish and livestock, contaminated water and soil and general health breakdown within the communities," Id. ¶ 25; (4)

physical injuries and/or property damage, Id. ¶ 50; and (5) pollution of rivers and creeks, Id. ¶ 53.

Defendants are correct that the Complaint fails to support these conclusory allegations with sufficient facts. There is no discussion whatsoever of how a fire on an offshore rig damaged the businesses, livelihoods, property, or health of Dr. Ogala or any of the other plaintiffs in this case. Plaintiffs make claims about damage to fish, livestock, contamination of water and soil, and "general health breakdown." Id. ¶ 25. But there are no allegations that the damaged livestock belonged to Plaintiffs, that the Plaintiffs' livelihoods depended on fisheries, that the contaminated water or soil harmed them or their property, or that the "general health breakdown" affected them. As for the claims of property damage and physical injury, there are no allegations that the fire ever spread from the KS Endeavor. Plaintiffs need to allege facts that make their damages claims plausible; in this case, they need facts that indicate how the fire actually harmed them. Cf. Brown v. Whirlpool Corp., 3:13CV1092, 2014 WL 546082 (N.D. Ohio Feb. 10, 2014) (dismissing trespass claim where complaint failed to plausibly allege that toxic materials had migrated from the dumping grounds to their properties). Absent some indication of what property was damaged, who suffered what physical injuries, and how the damage or injuries resulted from Defendants' conduct, the Court finds that Plaintiffs fail to state a plausible claim that they suffered an injury in fact sufficient to confer standing.

**C. Standing for Unnamed Plaintiffs**

The named plaintiffs in this action purport to represent some

10

65,000 other members of the Nigerian communities affected by the explosion and fire. Compl. ¶¶ 4, 9. Defendants argue that the named plaintiffs have no standing to assert claims on behalf of other members of their communities. Chevron MTD at 16-17. Plaintiffs respond by explaining that it is common practice in Nigeria for large groups of plaintiffs to sign onto a lawsuit by executing powers of attorney. Ogala Opp. at 17-18. Regardless of the regular practice in Nigeria, the Federal Rules of Civil Procedure require that an action "be prosecuted in the name of the real party in interest" unless the named party is an executor, administrator, guardian, bailee, trustee, party to a contract in another's benefit, or other party authorized by statute to bring suit on behalf of someone else. Fed. R. Civ. P. 17(a)(1). Plaintiffs have standing to seek redress for injuries done to them, "but may not seek redress for injuries done to others." Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 166 (1972). A power of attorney is insufficient to confer standing. See Johns v. Cnty. of San Diego, 114 F.3d 874, 876 (9th Cir. 1997) (power of attorney did not give plaintiff the right to assert another's constitutional claims); Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 18 (2d Cir. 1997) ("[A] power of attorney does not enable the grantee to bring suit in his own name.").

Alternatively, Plaintiffs may claim to represent a class under Rule 23. Plaintiffs here never expressly purport to represent a class, though they claim the Class Action Fairness Act as an alternative basis for reaching the amount-in-controversy threshold for diversity jurisdiction. Ogala Opp. at 3. The local rules in this District require actions that seek to be maintained as a class

11

action to bear the legend "Class Action" on the first page.  Civ. L. R. 3-4(a)(5).  No such legend appears on Plaintiffs' Complaint, nor do Plaintiffs claim anywhere in the Complaint to represent a class.  As a result, the Court must conclude that this is not a purported class action.  The Court finds that the named plaintiffs do not have standing to represent other members of their communities based on this Complaint.  Any claims asserted in the Complaint on behalf of unnamed non-parties are DISMISSED with leave to amend.

### D. Federal Jurisdiction

Plaintiffs state that this Court has jurisdiction over their claims under both federal question and diversity jurisdiction.  Compl. ¶ 7.  Federal question jurisdiction exists for "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and the action is between citizens of a foreign state and citizens of a U.S. state.  Id. § 1332(a).

Defendants argue that none of Plaintiffs' claims arise under federal law, and so federal question jurisdiction does not exist.  Plaintiffs do not dispute this.  All of their claims arise under California law or Nigerian law.  The Court finds that it does not have federal question jurisdiction over Plaintiffs' claims.

Defendants also argue that the Court lacks diversity jurisdiction.  Plaintiffs are all Nigerian citizens, and Defendants are all American corporations.  Compl. ¶¶ 9-12.  Therefore, this is a lawsuit between citizens of a foreign state and citizens of U.S. states, and complete diversity exists.  However, Defendants contend

12

that Plaintiffs cannot meet the $75,000 amount-in-controversy requirement. Chevron MTD at 15. A federal court lacks jurisdiction over an action between diverse parties only if it appears "to a legal certainty" that the plaintiff cannot recover the amount claimed. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938).

Plaintiffs claim a sum of $5 billion in damages. Compl. ¶ 9. Defendants argue that Plaintiffs cannot aggregate their claims to reach the $75,000 threshold and that $75,000 per plaintiff is an implausible damages estimate because the GDP per capita in the region of Nigeria where Plaintiffs live is $2,544. Chevron MTD at 15. Plaintiffs insist that their damages exceed $75,000. Ultimately, the Court cannot assess the reasonableness of Plaintiffs' damages estimates because of the lack of specificity in their Complaint. Due to that defect in the pleadings, and the fact that the Court dismisses this action on other grounds, the Court declines to rule on the amount-in-controversy issue at this time.

As an alternate argument, Plaintiffs argue that diversity jurisdiction exists under the Class Action Fairness Act ("CAFA") of 2005. Ogala Opp. at 3. CAFA provides for federal diversity jurisdiction over class actions in which the amount in controversy exceeds $5 million, any member of the plaintiff class is a foreign citizen, and any defendant is a citizen of a U.S. state. 28 U.S.C. § 1332(d). CAFA defines a class action as "any action filed under rule 23 of the Federal Rules of Civil Procedure." Id. at §1332(d)(1)(B); see also United Steel Workers Int'l Union v. Shell Oil Co., 602 F.3d 1087, 1091 (9th Cir. 2010) (holding that jurisdiction under CAFA is determined at time of filing and that

13

post-filing developments do not defeat jurisdiction). As discussed above, there is no indication in the Complaint that this action was filed as a class action, and the Court cannot treat it as one. If Plaintiffs seek to establish diversity jurisdiction under CAFA, they must file their case as a class action.

### E. Nuisance Claim

Plaintiffs' fourth cause of action is nuisance. The complaint does not specify whether Plaintiffs bring this claim under Nigerian law or California law, but both parties analyze the claim under California law. See Chevron MTD at 17; Ogala Opp. at 18-19. The Complaint also fails to specify whether Plaintiffs bring a private or public nuisance claim, but Plaintiffs pursue both claims in their opposition brief. Ogala Opp. at 19. Chevron argues that Plaintiffs have failed to state a claim for either.

Under California law, a private person may bring a claim for public nuisance only if the injury he suffers is different in kind from that suffered by public at large. Cal. Civ. Code § 3493 ("A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise."). As discussed previously, the Complaint alleges only vague categories of injuries that apply broadly to Plaintiffs' communities. There is no discussion of any specific injury to the named Plaintiffs individually. Therefore, the Complaint fails to state a claim for public nuisance.

"A private nuisance cause of action requires the plaintiff to prove an injury specifically referable to the use and enjoyment of his or her land." Adams v. MHC Colony Park Ltd. P'ship, 224 Cal. App. 4th 601, 610 (Cal. Ct. App. 2014). Plaintiffs' recitals of

14

various categories of injuries again fail to establish a plausible claim. To plead a claim for private nuisance, Plaintiffs must plead facts showing that Defendants' actions interfered with Plaintiffs' use and enjoyment of Plaintiffs' land. There are no such claims in the Complaint. In fact, the Complaint does not even state that Plaintiffs own any land at all. Plaintiffs' Complaint fails to state a claim for private nuisance as well. Plaintiffs' nuisance claims are DISMISSED with leave to amend.

### F. Negligent Infliction of Emotional Distress

As Defendants point out, Plaintiffs list negligent infliction of emotional distress as a cause of action in the caption of their Complaint but fail to plead it anywhere in the Complaint's body. In their opposition brief, Plaintiffs do not suggest that negligent infliction of emotional distress is a distinct cause of action. Nor should they: "[T]here is no independent tort of negligent infliction of emotional distress" under California law. Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 984 (Cal. 1993). Plaintiffs may plead emotional distress damages for their negligence claim, but they may not assert negligent infliction of emotional distress as a separate cause of action. To the extent that Plaintiffs claim negligent infliction of emotional distress as an independent cause of action under California law, that claim is DISMISSED with prejudice.

### V. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss. Plaintiffs' Complaint is DISMISSED with leave to amend. Plaintiffs shall file an amended complaint that addresses

the concerns identified above within thirty (30) days of the signature date of this Order. Failure to do so may result in dismissal of this action with prejudice.

    IT IS SO ORDERED.

Dated: May 19, 2014 

                                        UNITED STATES DISTRICT JUDGE