UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATTO IYELA GBARABE,<br><br>Plaintiff,<br><br>v.<br><br>CHEVRON CORPORATION,<br><br>Defendant. | Case No. 14-cv-00173-SI<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL, DENYING PLAINTIFF'S ADMINISTRATIVE MOTIONS TO FILE UNDER SEAL AND DENYING PLAINTIFF'S MOTION FOR SANCTIONS**<br><br>Re: Dkt. Nos. 138, 139, 144, 148 |

Defendant's motion to compel and plaintiff's motion for sanctions are scheduled for a hearing on August 12, 2016. Pursuant to Civil Local Rule 7-1(b), the Court determines that these matters are appropriate for resolution without oral argument, and hereby VACATES the hearing. The case management conference set for 3:00 p.m. on August 12 remains on calendar.

## BACKGROUND

On January 16, 2012, an explosion occurred on the KS Endeavor (Panama) drilling rig, which was drilling for natural gas in the North Apoi Field off of the coast of Nigeria. The explosion caused a fire that burned for forty-six days. Dkt. No. 99 ¶ 1. (Fourth Amd. Compl. or "FAC"). Plaintiff alleges that the KS Endeavor was operated by KS Drilling under the management of Chevron Nigeria Limited, which in turn acted at defendant Chevron Corporation's direction. *Id*. ¶ 2.

Plaintiff Natta Iyela Gbarabe is a fisherman who lives in a coastal community of Bayelsa State in Nigeria who depends on fishing for his primary method of earning a living. *Id*. ¶ 10(i).

The FAC alleges that plaintiff suffered "personal loss by way of an almost total loss of yield in the waters customarily fished by plaintiff after the KS Endeavor rig explosion and 46-day fire, as well as damage to fishing equipment." *Id*. The FAC also alleges that "Plaintiff further suffered health issues from the effects of the polluted air and water caused by the gas rig explosion of the KS Endeavour, which included diarrhea and vomiting." *Id*. Plaintiff seeks to represent "a prospective class comprising individuals who live and work in communities and co-operatives located in the Niger Delta region of southern Nigeria and identifies presently as comprising some 12,600 individuals spread across communities at or near the coastal waters of Bayelsa State, Nigeria." *Id*. ¶ 4. The FAC seeks compensation and punitive damages arising out of Chevron's alleged gross negligence, willful misconduct, negligence per se, acts of nuisance, and breaches of Nigerian law. *Id*. ¶ 3.

This lawsuit was filed on January 13, 2014. After several rounds of motion practice, plaintiff filed the fourth amended complaint on September 29, 2015. After several extensions of the schedule, plaintiff filed a motion for class certification on April 8, 2016. The class certification motion is scheduled for a hearing on December 9, 2016.

## DISCUSSION

### I. Defendant's motion to compel

Chevron requests that plaintiff be ordered to produce "documents reflecting or relating to the actual or potential financing or funding of the prosecution of this litigation" and to comply with Civil Local Rule 3-15. Chevron contends that plaintiff's funding agreement and related documents are relevant to determining adequacy of representation in this putative class action. Chevron argues that when the Court rules on the upcoming class certification motion, the Court must examine "the resources that counsel will commit to representing the class," Fed. R. Civ. Proc. 23(g)(1)(A)(iv), and Chevron argues that "this requirement is especially important in a case like this, involving claims that are likely to be expensive to investigate, prepare for trial, and try." Dkt. No. 139 at 1-2. Chevron notes that plaintiff does not dispute that his counsel, who appear to be solo practitioners, are dependent on outside funding to prosecute this case. Chevron states that

after initially refusing to produce the requested documents, plaintiff produced a heavily redacted copy of a litigation funding agreement, and that the redactions make it impossible for Chevron to assess whether counsel can commit adequate resources to the class.

Plaintiff's opposition concedes the relevance of the funding agreement to the class certification adequacy determination, and plaintiff does not assert that the agreement is privileged. Plaintiff states, "Plaintiff and his counsel have no personal objection to providing the requested information, contrary to defendant's assertions. However, plaintiff and his counsel are under a contractual obligation to preserve the confidentiality of the funder's identity, as well as the terms of the agreement, absent a Court order or a determination that it would be prudent to do so." Dkt. No. 143 at 2. Plaintiff proposes submitting an unredacted copy of the litigation funding agreement to the Court for *in camera* review, along with "an executed declaration by the funder's Chief Investment Officer which addresses each item identified by defendant in their motion. In this manner, plaintiff can meet the funder's confidentiality desire while satisfying the Court and defendant as to the adequacy of funding for this litigation." *Id*. Plaintiff's opposition only addresses the litigation funding agreement and does not address Chevron's request for other documents regarding plaintiff's funding.

The Court concludes that under the circumstances of this case, the litigation funding agreement is relevant to the adequacy determination and should be produced to defendant. The confidentiality provision of the funding agreement does not prohibit plaintiff from producing the agreement, and instead simply states that "if at any time such a requirement [to produce the agreement] arises or to do so would be prudent . . . the lawyers will promptly take all such steps as reasonably practicable to make such disclosure . . . ."[1] Plaintiff's proposal for *in camera* review of the agreement by the Court is inadequate because it would deprive Chevron of the ability to make its own assessment and arguments regarding the funding agreement and its impact, if any, on

---

[1] Even if the funding agreement prohibited plaintiff from producing the agreement, plaintiff does not cite any authority for the proposition that such a provision would override discovery obligations or a court order.

plaintiff's ability to adequately represent the class.[2]

Accordingly, the Court GRANTS Chevron's motion to compel and orders plaintiff to produce the litigation funding agreement to Chevron. On the present record, it is not clear whether there are other documents responsive to Chevron's document request, and if any documents do exist, whether those documents (such as documents related to "potential financing") are relevant and discoverable. To the extent there are documents aside from the litigation funding agreement that are responsive to Chevron's document request, the Court directs the parties to engage in an in person meet and confer session regarding those documents. If the parties are unable to resolve any disputes after the meet and confer session, the parties shall submit a joint letter brief to the Court.[3]

## II.   Plaintiff's motion for sanctions

Plaintiff seeks costs and sanctions in the amount of at least $211,988, which is the amount that plaintiff states he incurred as a result of an aborted inspection and sampling trip by plaintiff's experts in December 2015. Plaintiff states that prior to the December 11, 2015 inspection trip,

---

[2] As such, the Court DENIES plaintiff's administrative motions to file the agreement under seal for *in camera* review.

[3] Chevron also seeks an order requiring plaintiff to comply with Civil Local Rule 3-15 by disclosing the identity of the funder. Civil Local Rule 3-15, titled "Disclosure of Non-party Interested Entities or Persons," requires a party to disclose "any persons, associations of persons, firms, partnerships, corporations (including parent corporations), or other entities other than the parties themselves known by the party to have either (i) a financial interest (of any kind) in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding." Civ. Local Rule 3-15(b)(1). The rule states that "financial interest" shall have the same meaning assigned by 28 U.S.C. § 455(d)(4). Section 455(d)(4), in turn, provides in relevant part that "financial interest" means "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party." 28 U.S.C. § 455(d)(4).

Neither party cites any case law interpreting Civil Local Rule 3-15 with regard to third party litigation funding, and the Court has been unable to locate any. The Court notes that third party litigation funding is a relatively recent practice in this District. The Court is informed that the Northern District is currently considering a proposed revision to Rule 3-15 that would require disclosure of litigation funders. The Court finds it prudent to defer resolution of this question until the Northern District acts on the proposed revision. In any event, since plaintiff will produce the unredacted funding agreement, the identity of the funder should be disclosed.

plaintiff's counsel received assurances from Chevron that plaintiff's experts would be able access, inspect, and take samples from the site of the KS Endeavor explosion, but that when plaintiff's experts arrived at the site they were refused access by Chevron's Funiwa Control Station. Plaintiff asserts that the experts "were forced to retreat from the site inspection and return to port, some 19 hours boat ride from the rig site, after being forced to idle in the water for a complete day. The return to harbor was prompted by the fall of night, which raised the potential for assault by sea pirates, a risk the ship's captain refused to take, and by the continued refusal of defendant's agents to allow access or any safe layover site." Dkt. No. 138 at 1.

Plaintiff asserts that he was "absolutely justified in relying on defendant's representation that the inspection was unobjectionable and access unrestricted and that no formal Rule 34 production request was required." *Id*. at 7. Plaintiff argues that although defense counsel was kept "fully apprised of plans and preparations for a full scientific investigation in foreign waters replete with danger," Chevron "clearly didn't tell their Nigerian representatives in the area of [the experts'] plans, nor was it true that the explosion site lay in 'open waters.'" *Id*. Plaintiff asserts that at best, these are grossly negligent omissions, and "at worst they are willful acts of knowing obstruction in the knowledge that the expedition mounted would cost hundreds of thousands of dollars to accomplish." *Id*.

Chevron disputes plaintiff's characterization of events, and states that as soon as Chevron's United States counsel was notified of the issue, defense counsel promptly worked to resolve the situation and obtain the proper clearances for plaintiff's experts. Chevron states that within hours of being notified, the United States counsel confirmed that the vessels were clear to enter the area, but that plaintiff's experts had already left the area and were headed back to port. Chevron suggests that plaintiff decided not to have the experts return at that time because plaintiff's counsel knew "that the Court had on the afternoon of December 11 granted their request that the due date for the class certification motion be extended and had reset the date to April 8, 2016. ECF No. 116. And they knew that, wholly apart from the delay in December, they would need to make a second trip to the well site in January to conduct the seabed sampling that they had independently decided they would not attempt on the December trip." Dkt. No. 141 at 3. Chevron states that

5

plaintiff's experts visited the well site in January 2016 and completed their planned mapping and sampling between January 26 and February 3.[4]

Plaintiff seeks sanctions under Federal Rule of Civil Procedure 37, which governs "failure to comply with a court order." Defendant contends that Rule 37 does not apply because the December 2015 trip was not scheduled pursuant to a specific court order. The Court agrees. In *Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp.*, 982 F.2d 363 (9th Cir. 1992), the Ninth Circuit held that a district court could not sanction a party under Rule 37 for the party's destruction of evidence prior to filing suit. The court explained,

> This court has foreclosed the application of Rule 37 sanctions in cases such as this where a party's alleged discovery-related misconduct is not encompassed by the language of the rule. The definition of "order" in Rule 37(b) has been read broadly. *See, e.g., Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir.), *cert. denied*, 419 U.S. 832, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974) (Rule 37 sanctions may be imposed on a party for disobedience to a court's request in oral proceedings, so long as those proceedings give the party unequivocal notice that a court has asked that certain documents be produced.). But Rule 37(b)(2)'s requirement that there be some form of court order that has been disobeyed has not been read out of existence; Rule 37(b)(2) has never been read to authorize sanctions for more general discovery abuse.

*Id.* at 368.

Here, plaintiff acknowledges that there is no court order that Chevron has disobeyed. Instead, plaintiff asserts that Chevron's United States counsel either negligently or intentionally failed to coordinate with Chevron's Nigerian representatives to ensure that plaintiff's experts would be able to access the explosion site. Under *Unigard*, Rule 37 sanctions are unavailable for this conduct.

Alternatively, plaintiff argues that the Court can sanction Chevron as a discretionary exercise of the Court's inherent powers. The Court does have the authority to sanction a party for bad-faith conduct. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 35 (1991). While the Court finds it very unfortunate that plaintiff's experts were initially denied access to the site, the Court also recognizes that inspections of this nature are complicated due to the foreign location and

---

[4] Chevron also states that the January 2016 trip was delayed by approximately 8 days due to plaintiff's inability to obtain clearance from the Nigerian Navy for a portion of the journey, and Chevron states that it was forced to incur additional unplanned expenses as a result of that delay.

involvement of numerous foreign entities, including the Nigerian government. On this record, the Court does not find that Chevron engaged in bad faith conduct such that sanctions are warranted. Accordingly, the Court DENIES plaintiff's motion for sanctions.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part Chevron's motion to compel, DENIES plaintiff's administrative motions to file under seal, and DENIES plaintiff's motion for sanctions.

**IT IS SO ORDERED**.

Dated: August 5, 2016

_____
SUSAN ILLSTON
United States District Judge